Donald L. Brown
Ellsworth Correctional Facility
P.O. Box # 107
Ellsworth, Kansas 67439


### IN THE DISTRICT COURT OF DOUGLAS, COUNTY, KANSAS
### SEVENTH JUDICIAL DISTRICT


DONALD L. BROWN,

      DEFENDANT, Pro se.,

vs.

                             Case #    10-CR-938

STATE OF KANSAS, Et. al.,

      PLAINTIFF.
_____/


### – MOTION OF –

### PROCLAMATION OF INNOCENCE


COMES NOW, THE DEFENDANT, Donald L. Brown Pro se., re-
spectfully, and unequivocally states the following: The district
Court of Douglas County, Kansas was without proper jurisdiction
to accept defendant Browns' plea(s) of " guilty" based upon Mr.
Browns **non compos mentis** during the police interrogation, and at
the time the plea(s) were made. Mr. Brown did not possess the
requisite mindframe to fully understand what he was pleading to,
and only entered the plea(s) to appease his Pastor, and his court
appointed attorney who coereced him into pleading "guilty" on
the faith that if he cooperated with the State that he would re-
cieve a much lighter sentence, and that all of the offences would
be ran concurrent.

-1-

Such a plea resulted in several structural errors by the state; making the plea(s) inconsequential to the Constitutional directives mandated by Kansas statute, and the United State's Constitution. Structural errors did result in a manifest injustice to one who is actually innocent.

Mr. Brown now incontrovertibly proclaims (actual), (factual), and ( legal) innocence of the illusionary crimes that he was decieved into pleading guilty to.

## NATURE OF THE CASE

By way of "guilty" plea(s) Mr. Brown was adjudged guilty of (8) Jessica's Law felonies, and was sentenced to the maximum legal penalty of Life without the possibility of parole for 50 years, or two consecutive life (hard 25) sentences. His convictions included 3-counts of rape of a child under 14 YOA, 3-counts of aggravated sodomy, and 2-counts of aggravated indecent liberties with a child.

Mr. Brown alleges that he is infact innocent of the crime(s) that he entered the " guilty" plea(s) to, and that had he been in the right frame of mind he never would have entered the plea because he does not remember doing what his Pastor, and attorney told him that he did which is a atortiori for why he believes that he is innocent.

## STATEMENT OF THE ISSUES

I.          WHETHER THE DISTRICT COURT WAS REMISS FOR NOT ORDERING A COMPETENCY EVALUATION PRIOR TO THE PLEA ?

II.        WHETHER MR. BROWN SUFFERED FROM DIMINISHED
CAPACITY AT THE TIME OF THE PLEA ?

III.      WHETHER THE STATE COMMITTED STRUCTURAL ERRORS
THAT AMOUNTED TO A MANIFEST INJUSTICE ?

IV.      WHETHER MR. BROWN IS ACTUALLY INNOCENT OF
THE CRIMINAL OFFENSES HE ENTERED PLEAS TO ?

## STATEMENT OF THE FACTS

A. THE STATE OF KANSAS HAD A CONSTITUTIONAL OBLIGATION TO
ORDER A COMPETENCY EVALUATION FOR THE DEFENDANT.

B. MR. BROWNS FIFTH, SIXTH AND FOURTEENTH AMENDMENT RIGHTS
WERE GROSSLY VIOLATED BY THE STATE WHEN THE STATE ALLOWED MR.
BROWN TO ENTER GUILTY PLEAS WHEN THE STATE KNEW BEFOREHAND THAT
HE WAS NOT FUNCTIONING ON THE PSYCHOLOGICAL LEVEL OF A NORMAL
PERSON AS EVIDENCED BY HIS ACTIONS.

C. STRUCTURAL ERRORS CONTRIBUTED TO THE DEFENDANT MAKING HIS
GUILTY PLEA(S).

D. MR. BROWN IS ACTUALLY, FACTUALLY, AND LEGALLY INNOCENT
OF THE CRIMES THAT HE ENTERED THE GUILTY PLEA(S) TO

Bwn

## ARGUEMENT AND LEGAL AUTHORITIES

**ISSUE I.**          **IT WAS INCUMBENT UPON THE DISTRICT COURT TO
ORDER THAT THE DEFENDANT RECIEVE A COMPETENCY
EVALUATION PRIOR TO THE PLEA.**

Under K.S.A. 2014 Supp. 22-3302(1), a district court judge has a duty to inquire into a
defendant's competency should the circumstances warrant. The statute states:

"If . . . upon the judge's own knowledge and observation, the judge before whom the case is
pending finds that there is reason to believe that the defendant is incompetent to stand trial
the proceedings shall be suspended and a hearing conducted to determine the competency of
the defendant." K.S.A. 2014 Supp. 22-3302(1). Under the existing circumstances of this
particular case the Judge should have, but did not order a competency evaluation even after
the judge was notified that the defendant lack of knowledge because of the defendant's low
i.q., was extremely questionable. A defendant is incompetent to stand trial when he or she
cannot understand the nature or purpose of the proceedings or cannot make or assist in
making his or her defense because of mental illness or defect. K.S.A. 22-3301(1). This standard
is in accord with the standard pronounced by the United States Supreme Court, which states
that "the 'test must be whether [the defendant] has sufficient present ability to consult with
his lawyer with a reasonable degree of rational understanding—and whether he has a rational
as well as factual understanding of the proceedings against him.'" Dusky v. United States, 362
U.S. 402, 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960). "The failure to hold a competency hearing,
when 'evidence raises a bona fide doubt as to defendant's competency, is a denial of due
process.' [Citations omitted.]" State v. Foster, 290 Kan. 696, 704, 233 P.3d 265 (2010). "Courts
presume a criminal defendant is competent to stand trial." State v. Barnes, 293 Kan. 240, 256,
262 P.3d 297 (2011). Furthermore, "[a] defendant is not incompetent to stand trial simply
because that individual has received or needs psychiatric treatment." State v. Harkness, 252
Kan. 510, 516, 847 P.2d 1191 (1993).

In Browns case, competency questions   were not raised because counsel failed to acknowledge
the information that was provided to him by Christy A. Blanchard, Ph.D. who evaluated him
regarding his sexual prowess; and who also informed counsel that Mr. Brown was functioning
at a low rate of intelligence. Alot of Mr. Brown not being able to understand what was going on
during the plea colloquy can be affirmed by his questioning of the information presented to
him by the judge. Mr. Brown did not fully understand what was going on and made several
comments regarding the questions that were presented.

Constitutional due process protections preclude district courts
from accepting Mr. Browns' plea because of his mental in compe-
tency. The deprivation of liberty inflicted on Mr. Brown was su-
fficently grave and he did not fully understand what the nature
of the criminal offense was. The due process clause of the Four-
teenth Amendment to the United States Constitution requires that
a defendant fully understand what the nature of the offense is,
and that the defendant understand what is going on. Mr. Brown did
not understand anything ... and does not remember commiting any
of the crimes that his attorney told him to enter the plea(s) to.
Mr. Brown asserts that he had a constitutionally protected due
process right to be mentally competent at his plea hearing. In
turn, Mr. Brown says the appropiate remedy requires the plea to
be set aside and he be given a new hearing. As the Supreme Court
has explained in several cases, that may not be the best remedy,
but with some qualification, it provides an acceptable alternative.
The record in the district court lent support to the Browns concern—the circumstances of the
underlying crime were suggestive of some degree of mental decompensation and the explicit
terms of the plea agreement acknowledged Browns chronic mental health issues.

The essential principle embodied in the Due Process Clause is this: The government may not
deprive a person of a property right or a liberty interest without affording that person the
opportunity to be heard in a meaningful way and at a meaningful time to avert a wrongful
deprivation of that right or interest. Mathews v. Eldridge, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L.
Ed. 2d 18 (1976) ("The fundamental requirement of due process is the opportunity to be heard
'at a meaningful time and in a meaningful manner.'"); Mullane v. Central Hanover Bank & Trust
Co., 339 U.S. 306, 313, 70 S. Ct. 652, 94 L. Ed. 865 (1950) (The Due Process Clause "at a
minimum" requires that "deprivation of life, liberty, or property by adjudication be preceded
by notice and opportunity for hearing appropriate to the nature of the case."); Taylor v. Kansas
Dept. of Health & Environment, 49 Kan. App. 2d 233, Syl. ¶ 4, 305 P.3d 729 (2013).
Constitutional due process is an especially elastic concept in that the protections required vary
depending upon the importance of the specific property right or liberty interest at stake. Not
surprisingly, those government actions aimed at involuntarily confining a person—an especially
stringent deprivation of liberty—call for exacting due process protections. See Hamdi v.
Rumsfeld, 542 U.S. 507, 529, 124 S. Ct. 2633, 159 L. Ed. 2d 578 (2004) ("[T]he most elemental
of liberty interests [is] the interest in being free from physical detention by one's own
government."); Foucha v. Louisiana, 504 U.S. 71, 78-80, 112 S. Ct. 1780, 118 L. Ed. 2d 437

Bwn.

(1992) (government effort to involuntarily commit individual because of mental illness implicates substantive liberty rights and triggers procedural due process protections).

Against that backdrop, the question remains whether the State may accept a plea of guilt by someone who is not mentally competent at the time of the plea hearing. Neither the United States Supreme Court nor the Kansas Supreme Court has addressed the issue. Competency for due process purposes entails "the capacity to understand the nature and object of the proceedings," to consult with a lawyer, and to assist in presenting a defense. Drope v. Missouri, 420 U.S. 162, 171, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975); State v. Woods, 301 Kan. 852, 857-58, 348 P.3d 583 (2015). Although the definition of competency has been enunciated in criminal cases, it is not exclusive to those proceedings. See In re Care & Treatment of Sykes, 303 Kan. 820, Syl. ¶ 3, 367 P.3d 1244 (2016) (recognizing due process definition of competency but finding respondent in sexually violent predator commitment proceeding need not be competent). Given the liberty interest at stake in a plea hearing, the near ineluctable answer to the question Mr. Brown has posed must be in the negative. There were legitimate reasons to believe Brown may not have been competent The district court, therefore, erred. Because Brown was not evaluated and the record does not obviously establish that he was, infact incompetent leading up to and during the plea hearing; therefore, no court can determine if the error caused any legal prejudice.

Therefore,the court must tailor its remedy to that possibility. The district court should determine if a retrospective competency evaluation can be done. That is, an evaluation aimed at determining if Brown was competent when the plea took place. State v. Ford, 302 Kan. 455, Syl. ¶ 8, 353 P.3d 1143 (2015) (recognizing retrospective competency evaluation as appropriate remedial tool). The feasibility of a retrospective evaluation depends on the overall circumstances and the lapse of time. Such an evaluation would require an opinion from a qualified expert witness based on reliable lay accounts of the subject's mental capacity at the relevant time, any elucidating medical or psychological examinations of the subject, the expert's own observation and assessment of the subject, and any other illuminative information. As suggested in Ford, a retrospective evaluation is an accommodation to the State, since the alternative typically would require setting aside the result of the challenged proceeding. 302 Kan. at 471-472.

As such the District Court should explore the possibility that Mr. Brown did not fully

BWN

understand the *mens rea* as to what he pled "guilty" to because he struggled with a Diminished Capacity state of mind.

ISSUE III.     MR. BROWNS PLEA OF GUILT WAS A DIRECT VIOLATION OF HIS FIFTH, SIXTH AND FOURTEENTH AMENDMENT RIGHTS; THE PLEA WAS A RESULT OF A INVOLUNTARY CONFESSION AND PLEA

Christy Blanchard, p.h.D. was employed by the defense to evaluate Browns' mental state and his risk for sexual recidivism. Part of Dr. Blanchards evaluation of Mr. Brown reflected that he suffered from a low learning disability. This learning disability resulted in Browns' involuntary confession of the crime, and his plea. Although the issue pertaining to Browns' ineffectiveness of counsel has already been decided its important here because counsel failed to file the notice to the district attorney that Brown was suffering from a mental disease. Clear purpose of Kan. Stat. Ann. § 22-3219(2) is to provide the State and defense equal and adequate access to psychiatric information that serves as the foundation for an insanity defense. Absent an insanity defense, the access mandated by § 22-3219 is no longer justified. State v. Williams, 20 Kan. App. 2d 185, 884 P.2d 755, 1994 Kan. App. LEXIS 129 (Kan. Ct. App. 1994).  under the state and federal Constitutions a defendant is entitled to present the theory of his or her defense and that the exclusion of evidence that is an integral part of that theory violates a defendant's fundamental right to a fair trial." State v. Evans, 275 Kan. 95, 102, 62 P.3d 220 (2003). He

essentially argues that his only expert witness, psychologist Blanchard, would have provided evidence integral to his defense of lack of intent caused by mental disease or defect. But was not questioned by the attorney, or the state regarding such disease; particularly in light of the fact that Mr. Brown had a difficult time attempting to substantiate a factual reason for the plea. Infact, Mr. Brown, rather than relating details  from the top of his head as normal pleaders would - he read from a detailed statement that his attorney had written, and presented to him to read to the court. while the courts have said that the admissibility of evidence is often within the discretion of the district judge, constitutional considerations still prevail. See Evans, 275 Kan. at 102.

BRWN

Illustrative of these concepts is State v. Humphrey, 252 Kan. 6, 845 P.2d 592 (1992). There, this court acknowledged that the admissibility of expert testimony lies within the sound discretion of the district court.  The court held that the district court had erred in holding under K.S.A. 60-456 that a psychiatrist's testimony was improperly based in part upon hearsay, i.e., the defendant' statements. In concluding the statements were not hearsay, the court held that the psychiatrist should have been allowed to testify about defendant's lack of intent to commit the murder. The court concluded the district court had denied defendant his right to present his theory of defense, and reversed and remanded for a new trial.

The courts analysis begins with the statute. K.S.A. 22-3220 provides:

"It is a defense to a prosecution under any statute that the defendant, as a result of mental disease or defect, lacked the mental state required as an element of the offense charged. Mental disease or defect is not otherwise a defense. The provisions of this section shall be in force and take effect on and after January 1, 1996."

"Evidence has been presented that the defendant was afflicted by mental disease or defect at the time of the alleged crime. Such evidence is to be considered only in determining whether the defendant had the state of mind required to commit the crime. The defendant is not responsible for crimes that he commited while suffering from a mental disease.

As the court has often explained, prior to the effective date of the statute -- January 1, 1996 -- there were two defenses relating to mental disease or defect: insanity and diminished capacity. See State v. Hedges, 269 Kan. 895, 900, 8 P.3d 1259 (2000). Criminal insanity was evaluated using the M'Naghten test. 269 Kan. at 900. While the defense of diminished capacity was not a substitute for a plea of insanity, it could be used for the limited purpose of negating specific intent where a defendant was sane. 269 Kan. at 901. However, K.S.A. 22-3220 removed any reference to insanity and instead focused on a lack of the mental state required as an element of the offense charged. It now prevents a defendant from raising insanity or diminished capacity as a defense. See State v. Jorrick, 269 Kan. 72, 81, 4 P.3d 610 (2000). Accordingly, all capacity defenses, for crimes which took place on or after January 1, 1996, focus on the mens rea of the crime. 269 Kan. at 83. In order for the state to prove the *mens rea* of Mr. Browns crime the state would have had to prove intent which is a element of the crimes that were imputed to Mr. Brown. The court did not prove the necessary elements to accept Mr. Browns' illusionary plea. The state abused its power by accepting such a plea since the court was aware

Brwn

of the fact that Mr. Brown suffered from a low mental disability, and learning disorder.

   As a result, K.S.A. 22-3220 allows a defendant to present evidence tending to show that he or she lacked the mental state required for the offense  charged. State v. Davis, 277 Kan. 309, 329-30, 85 P.3d 1164 (2004); State v. Bethel, 275 Kan. 456, 474, 66 P.3d 840 (2003). "Like insanity, diminished capacity disappears as a separate defense [with the appearance of 22-3220]. Mens rea simply carries diminished capacity to the logical extreme. With the separate definition of insanity gone, there is no barrier to accepting the idea that if one's capacity can be so diminished by mental disorder as to destroy the capacity to form a special intent, then it may in some  circumstances  be so diminished as to destroy capacity to form any criminal intent at all. That has always been an illogical limitation, thought necessary only to avoid overlap of insanity and diminished capacity." In State v. Jackson, 238 Kan. 793, 804, 714 P.2d 1368, cert. denied 479 U.S. 821, 93 L. Ed. 2d 40, 107 S. Ct. 88 (1986),  where the Kansas Supreme Court court formally acknowledged the diminished capacity defense, a psychological expert had been allowed to testify that defendant exhibited some symptoms of temporal lobe epilepsy and suffered from brain damage which  had been in existence for a long time and prevented the full development of his intellectual academic skills and higher level activity. However, the expert did not testify as to whether defendant knew right from wrong at the time of the crime. This puts the defendant basically on the exact same playing ground.

   Next, Brown contends that he gave a coerced and involuntary plea. He argues that Clarkes discussion with him, and his writing out the things Brown needed to say in order for the judge to accept the plea was coercive, causing him to involuntarily plead ███ guilty because it made him feel as though he had to take a plea or receive a prison sentence for a longer period of time with each count running consecutive to to the other. life. Brown also contends that he pled guilty without fully knowing and understanding his rights. Brown acknowledges that his arguments contradict the statements that he made at the time of his plea hearing. Brown informed the district court (1) he had not felt threatened or pressured to accept the plea, (2) he had enough time to discuss the plea with counsel, (3) he understood the punishment he was facing, and (4) he was satisfied with counsel's performance only to appease his attorney, his Pastor, the court and " the alleged victim(s) family".

   In summary, the record does not support the district court's  finding that Brown voluntarily and understandingly entered into the plea agreement. Considering the record as a whole, a reasonable person would not agree with the district court's decision that Brown  was in a

Brwn

state of mind requisite of fully understanding the nature of the plea and what the *mens rea* of the offenses entailed.

ISSUE IV.    STRUCTURAL ERRORS CONTRIBUTED TO A UNCONSTITUTIONAL
             PLEA OF GUILTY.

Whether structural error infected a defendant's trial is a question of law over which plenary review is exercised. A structural error is one that is so pervasive it defies analysis by harmless-error standards. These errors are structural defects in the constitution of the trial mechanism, which affect the entire conduct of a trial from beginning to end. They prevent a trial court from serving its basic function of determining guilt or innocence and deprive defendants of the basic protections of a criminal trial. Such errors render the trial fundamentally unfair, requiring automatic reversal. So far, the United States Supreme Court has identified a very limited class of cases involving structural errors, including (1) total deprivation of counsel, (2) lack of an impartial trial judge, (3) denial of the right to self-representation at trial, (4) violation of the right to a public trial, (5) an erroneous reasonable-doubt instruction, and (6) unlawful exclusion of members of a defendant's race from a grand jury. Mr. Brown believes that his judge during the plea was biased, and based her decisions on outside influences; particularly in light of the fact that he recieved a lengthy sentence when his criminal history did not fit the criteria of someone to recieve such a harsh sentence. Counsel was also absent in his legal obligations to defend the defendant; and/or file the necessary motions in limine. Such structural errors deprived Mr. Brown of his due process, and equal protection of the law guarantees. law over which courts exercise plenary rev. St. v Hill, 26 P.3d 1267, abrogated on other grounds by State v. Voyles, 284 Kan. 239, 252-53, 160 P.3d 794 (2007).

A structural error is one that is so pervasive it defies "analysis by 'harmless-error' standards." Arizona v. Fulminante, 499 U.S. 279, 309, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991). These errors are "structural defects in the constitution of the trial mechanism," which affect the "entire conduct of the trial from beginning to end." 499 U.S. at 309-10. They prevent the trial court from serving its basic function of determining guilt or innocence and deprive defendants of the "basic protections" of a criminal trial and pleas. Neder v. United States, 527 U.S. 1, 8-9, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999) (quoting Rose v. Clark, 478 U.S. 570, 577-78, 106 S. Ct. 3101,

Bwn.

92 L. Ed. 2d 460 [1986]). Such errors render the trial "'fundamentally unfair,'" requiring automatic reversal. Neder, 527 U.S. at 8 (quoting Rose, 478 U.S. at 577). At the preliminary stage of the proceedings counsel took it upon himself, against the advice of Mr. Brown to waive the proceedings; thereby leaving Mr. Brown in the dark regarding "whatever evidence the state had against him". Counsel fabricated several stories regarding the "alleged" evidence that the state had planned to put on display, all in a attempt to confuse, and frighten the defendant into pleading guilty to a criminal offense that he never remembered commiting. Counsel also failed to object to the detective testifying about a crime in the state of Virginia which certainly prejudiced the mind of the judge, and the prosecutor.

A preliminary hearing is a right that is mandated in Kansas by statute; it is not an express constitutional right. See K.S.A. 22-2902; State v. Knighten, 260 Kan. 47, 55, 917 P.2d 1324 (1996). The preliminary hearing establishes standards and procedures for criminal prosecution that are derived from the Fourth Amendment and its common-law antecedents. Gerstein v. Pugh, 420 U.S. 103, 111, 43 L. Ed. 2d 54, 95 S. Ct. 854 (1975); In re D.E.R., 290 Kan. 306, 311-12, 225 P.3d 1187, 2010 Kan. LEXIS 170, (2010). A defendant has the right to be present in person at a preliminary hearing, to introduce evidence on the defendant's own behalf, and to cross-examine witnesses against the defendant. K.S.A. 22-2902(3). The preliminary hearing is the method utilized in Kansas to satisfy the Fourth Amendment right of a person to be free from extended pretrial restraint of liberty without a judicial determination of probable cause to support the detention or restriction on liberty. In re D.E.R., 290 Kan. at 312, 2010 Kan. LEXIS 170, at .

 A preliminary hearing is often a critical stage of the criminal process. See, e.g., Moore v. Illinois, 434 U.S. 220, 54 L. Ed. 2d 424, 98 S. Ct. 458 (1977) (identification of defendant at preliminary  hearing); Coleman v. Alabama, 399 U.S. 1, 9, 26 L. Ed. 2d 387, 90 S. Ct. 1999 (1970) ("guiding hand" of counsel at preliminary hearing is essential to protect accused against erroneous or improper prosecution: examination of witnesses may expose fatal weaknesses in the State's case that may lead magistrate to refuse to bind the accused over; interrogation of witnesses can fashion impeachment tool for use in cross-examination of State's witnesses at trial; defendant can discover nature of case and enable preparation of proper defense; and effective arguments can be made on such matters as necessity for early psychiatric examination or bail); White v. Maryland, 373 U.S. 59, 60, 10 L. Ed. 2d 193, 83 S. Ct. 1050 (1963) (whatever normal function of preliminary hearing under Maryland law might be, preliminary hearing was critical stage of proceeding for right-to-counsel  purposes where defendant

Bwn.

would have been able to adjudge for himself which way he wanted to proceed.

As the present case illustrates, the preliminary hearing is a critical phase of the criminal prosecution. In addition to determining whether probable cause existed sufficient to bring Brown to trial, sworn testimony would have been taken which would have given the defense a better outlook and perspective on whether counsel was being truthful, or fabricating his statements just to get the case over with. [E]rroneous deprivation of the right to counsel of choice, 'with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as "structural error."' . . . . In support of his structural error argument, Brown cites United States v. Cronic, 466 U.S. 648, 80 L. Ed. 2d 657, 104 S. Ct. 2039 (1984). Brown primarily relies on State v. Carter, 270 Kan. 426, 14 P.3d 1138 (2000), however, wherein our Supreme Court considered and applied Cronic, and concluded that Carter's counsel betrayed his client by "'fail[ing] to function in any meaningful sense as the Government's adversary.'" 270 Kan. at 435 (quoting Cronic, 466 U.S. at 666).

What occured at Mr. Browns' trial resulted in a *manifest injustice* not only to Mr. Brown but the community at large because Mr. Brown did not commit the crimes that he was induced to enter guilty pleas to.   While the Supreme Court has acknowledged that a plea may also be rendered involuntary if the defendant "has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt," Henderson, 426 U.S. at 645 .

The United States Supreme Court has instructed us that a structural error is one that "'affect[s] the framework within which the trial proceeds' rather than being 'simply an error in the trial process itself.'" Weaver v. Massachusetts, 137 S. Ct. 1899, 1907, 198 L. Ed. 2d 420 (2017) (alteration in original) (quoting Arizona v. Fulminante, 499 U.S. 279, 310, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991)). Thus, a structural error "infect[s] the entire trial process." Neder v. United States, 527 U.S. 1, 9, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999

Applying this logic to the instant matter, The Court can readily distinguish between a case where the court engages in no plea colloquy at all, see Boykin, 395 U.S. at 242-45, and one where the court merely omits an element.  When a court fails to engage in any plea colloquy, The courts are left to wonder whether the defendant understood the charge against him, the maximum statutory penalties he would face if convicted, the strength of the state's evidence, and the rights he was waiving by pleading guilty. By contrast, when the court merely omits an element of the offense, the court nonetheless advises the defendant of the charges

Brwn

and what the *mens rea* the state would have to prove in the event Mr. Brown elected on taking this case before a jury of his peers.

ISSUE V.        MR. BROWN STATES THAT HE IS ACTUALLY, FACTUALLY AND LEGALLY INNOCENT OF THE CRIMINAL CHARGES THAT HE ULTIMATELY WAS CONVINCED TO ENTER GUILTY PLEAS TO

Most motions, etc., have a 1-year statute of limitation to be filed. However, under the exceptional circumstance clause, and for good cause shown the time limit can be extended. A district court may extend the one-year time limitation only to prevent manifest injustice. K.S.A. 2019 Supp. 60-1507(f)(2). The burden is on the prisoner to establish manifest injustice by a preponderance of the evidence. See White, 308 Kan. at 496. Courts broadly have described manifest injustice as something "'obviously unfair' or 'shocking to the conscience.'" State v. Holt, 298 Kan. 469, 480, 313 P.3d 826 (2013). But by statute, the court's manifest injustice analysis is limited to determining (1) "why the   prisoner failed to file the motion within the one-year time limitation" and  (2) "whether the prisoner makes a colorable claim of actual innocence." K.S.A. 2019 Supp. 60-1507(f)(2). Brown contends that he satisfies both components.

In the event that this court construes the present motion as a K.S.A. 60-1507 motion Mr. Brown certainly believes that he  has established the required manifest injustice standard to overcome an untimely motion. K.S.A. 60-1507 permits the court to determine "whether the prisoner makes a colorable claim of actual innocence." K.S.A. 2019 Supp. 60-1507(f)(2)(A). Mr. Brown argues that under two United States Supreme Court cases—Schlup, 513 U.S. 298, 115 S. Ct. 851, 130 L. Ed. 2d 808, and Carrier, 477 U.S. 478, 106 S. Ct. 2639, 91 L. Ed. 2d 397—he has established a colorable claim of actual innocence to provide a "gateway" around the procedural hurdle of untimeliness that would otherwise apply.

The consideration of Browns argument is made easier by our Kansas Supreme Court's recent  decision in Beauclair. See 308 Kan. 284, 419 P.3d 1180. In Beauclair, our Supreme Court expressly identified the two types of actual innocence claims that exist in Kansas habeas law. 308 Kan. at 295-99. First, there are the claims that fall under Herrera v. Collins, 506 U.S. 390, 113 S. Ct. 853, 122 L. Ed. 2d 203 (1993). Habeas claims pursuant to Herrera are ones in which a movant asserts a substantive claim of actual innocence—e.g., arguing that newly discovered evidence establishes a movant is actually innocent and requires a new trial. Beauclair, 308 Kan. at 295-99 (citing Neer v. State, No. 111,230, 344 P.3d 970, 2015

BWN

1310815 [Kan. App. 2015] [unpublished opinion]). The most familiar Herrera claims are those in which DNA testing leads to exoneration of the applicant.

Second, there are the claims that fall under Schlup, 513 U.S. 298, 115 S. Ct. 851, 130 L. Ed. 2d 808, and Carrier, 477 U.S. 478, 106 S. Ct. 2639, 91 L. Ed. 2d 397. Schlup claims are procedural habeas claims that provide a "'gateway through which a habeas petitioner must pass to have his [or her] otherwise barred constitutional claim considered on the merits.'" Beauclair, 308 Kan. at 298-99 (quoting Schlup, 513 U.S. at 315). The claim of actual innocence is not itself a constitutional claim, but instead it provides the defendant with an opportunity to clear the procedural hurdles of untimeliness and successiveness that otherwise prevent the court from considering the underlying habeas claim on the merits. Beauclair, 308 Kan. at 297-99 (citing Schlup, 513 U.S. at 314-15). Therefore, a defendant may succeed on a Schlup claim only if the defendant's claims  for habeas relief are procedurally barred. Under this standard Mr. Browns claims are procedurally barred. To satisfy the actual innocence component of the manifest injustice standard, the Kansas habeas statute requires  Brown "to show it is more likely than not that no reasonable juror would have convicted [him] in light of the evidence." K.S.A. 2019 Supp. 60-1507(f)(2) (A). As our Supreme Court pointed out in its recent Beauclair opinion,  that statutory standard "mirrors" the federal caselaw standard Brown has cited from the United States Supreme Court's opinion in Carrier. See Beauclair, 308 Kan. at 301. Under the Carrier standard, an inmate seeking habeas relief is entitled to consideration of the merits of the motion if the inmate's claim of actual innocence establishes it is more likely than not that no reasonable juror would have convicted  in light of the evidence. And because the question that jurors must answer in a criminal trial is whether a defendant is guilty beyond a reasonable doubt, the inmate's "burden at the gateway stage is merely to demonstrate 'that more likely than not any reasonable juror would have reasonable doubt.'" Beauclair, 308 Kan. at 301 (quoting House v. Bell, 547 U.S. 518, 538, 126 S. Ct. 2064, 165 L. Ed. 2d 1 [2006] [discussing the Carrier standard]). In Carrier, the Court stated: "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." 477 U.S. at 496. Schlup, the other United States Supreme Court case Brown cites, rely upon the Carrier standard. After noting  the   similarity between the language of our statute and the federal standard, our Supreme Court "adopt[ed] the Carrier standard" when considering an actual innocence claim as a gateway around the procedural bar of the one-year time limit in K.S.A. 2019 Supp. 60-1507(f).

Application of this standard is a highly factual inquiry, even at the stage of determining whether the petitioner should be granted an evidentiary hearing on his actual innocence claim. See Schlup, 513 U.S. at 301-13 (setting forth, in great detail, the facts supporting the petitioner's requested relief). The district court "must make its determination concerning the petitioner's innocence 'in light of all the evidence.'" 513 U.S. at 328. It must review both the reliability of the  evidence and its materiality  to the

conviction being challenged, which in turn requires an examination of the quality of the evidence that produced the original conviction. See House, 547 U.S. at 538 ("Schlup makes plain that the habeas court must consider "'all the evidence,'" old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial.' Based on this total record, the court must make a 'probabilistic determination about what reasonable, properly instructed jurors would have done had Brown opted on a jury trial.' [Citations omitted.]"); Schlup, 513 U.S. at 331-32 ("[T]he District Court must assess the probative force of the newly presented evidence in connection with the evidence of guilt adduced at the plea). But the "court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors." House, 547 U.S. at 538. Since a jury did not hear the new evidence, the district court should "assess how reasonable jurors would react to the overall, newly supplemented record." 547 U.S. at 538. And unlike summary judgment proceedings, the district court may make some credibility determinations based on the new evidence in determining whether to conduct an evidentiary hearing. See Schlup, 513 U.S. at 332 ("[T]he court may consider how . . . the likely credibility of the affiants bear on the probable reliability of that evidence."). Finally, it bears emphasizing that

"The Schlup standard does not require absolute certainty about the petitioner's guilt or innocence. A defendant's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would have found him guilty beyond a reasonable doubt—or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt." House, 547 U.S. at 538.

## CONCLUSION

In all due respect Mr. Brown has demostrated that due to his unstable state of mind, i.e., **non compos mentis** during the police investigation where a " confession " was made and during the plea hearing, the district court judge should have, but was remiss in ordering a competency evaluation to determine if Mr. Brown had the requisite intent to understand the proceedings well enough to make the plea. As such Mr. Brown's due process, and Equal Protection Of The Law guarantees' have been violated under the Fifth, Sixth and Fourteenth Amendments' of the United States'

-15-

Constitution. Structural errors contributed to the involuntary plea of " guilty ". Mr. Brown is actually, factually and legally innocent of the charge(s) he entered the plea to at the bad advice of counsel, and his pastor. Mr. Brown does not remember doing what he was told to tell the court, and the statement that he read to the court that was prepared by his counsel. In this situation a manifest injustice has occured to someone who is actually innocent and this court should put the case on the calendar for a full, and fair evidentiary hearing to determine the full understanding of his claims.

Respectfully,

Donald Brown

Donald Brown

### CERTIFICATE OF SERVICE

I Donald Brown hereby state that I did on this _28_ day of _SEPTEMBER_ ( _2021_ ) place a true and correct copy of the foregoing Motion for Proclamation Of Innocence in the U.S. mail, postage prepaid addressed to the following:

Clerk/District Court
Douglas County Courthouse
111 E. 11th St.
Lawrence, Kansas 66044

Donald Brown

Donald Brown

-16-